UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DR. GERALD R. FINKEL, as Chairman of the
Joint Industry Board of the Electrical Industry,

                Petitioner,

        -against-

JCF ELECTRIC, INC.,

                Respondent.
-------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
21-cv-03161 (CBA) (RER)

**AMON, United States District Judge:**

On June 4, 2021, Petitioner Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Finkel" and/or the "JIB"), filed a petition (the "Petition") to confirm and enforce an arbitrator's award (the "Award") rendered on March 31, 2021 against Respondent JCF Electric, Inc. ("Respondent"). (ECF Docket Entry ("D.E.") # 1 ("Pet.").) The Award was rendered pursuant to a collective bargaining agreement ("CBA") between Local Union #3 of the International Brotherhood of Electrical Workers (the "Union") and Respondent. To date, Respondent has neither responded to Finkel's confirmation action nor otherwise sought to challenge the Award. For the reasons set forth below, the unopposed petition to confirm the arbitration award and the related request for attorneys' fees and costs incurred in bringing this action are GRANTED.

## BACKGROUND

The following facts are taken from the Petition and exhibits thereto and presumed true because no response to the Petition has been filed and the time in which to do so has expired.

### I.    The Plans

Finkel is Chairman of the JIB, which is the administrator of various employee benefit multi-employer plans established and maintained pursuant to a CBA between the Union and

1

Respondent. (Pet. ¶ 4.) The JIB is the administrator and fiduciary under the Employee Retirement Income Security Act of 1974 ("ERISA") of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry, the Joint Apprenticeship and Training Program, and the National Electrical Benefit Plan ("NEBF") (collectively, the "ERISA Plans"). (Id. ¶ 5.) The ERISA Plans are jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with the Labor Management Relations Act of 1947. (Id. ¶ 7.)

Pursuant to the CBA, the JIB may also collect dues assessments on behalf of the Union, employee loan payments due to the Union and certain plans, contributions to fund the operations of the JIB, and contributions for the following plans: the Electrical Employers Self Insurance Safety Plan, the Committee on Political Education, and the Benefit and Wage Delinquency Fund (the "Non-ERISA Plans"). (D.E. # 1-8 at 2-3.) The JIB is the administrator of both the ERISA and Non-ERISA Plans (collectively, the "Plans").

## II. The Collective Bargaining Agreement

As a member of the New York Electrical Contractors Association, Respondent agreed to be bound to the CBA with the Union for the period April 10, 2019 through April 13, 2022. (Pet. ¶¶ 14-15.) Under the CBA, Respondent was required to make certain contributions to the Plans and to the Union for all work within the trade and geographical jurisdiction of the Union, and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf the contributions are made. (Id. ¶ 16, Ex. B.)

2

The CBA also provides that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages in an amount not in excess of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions."[1] (Id. ¶ 18.) Through the CBA, Respondent also agreed to "be bound by the provisions of the Plan and Trust documents and all amendments thereto . . . including but not limited to, the Policy for the Collection of Delinquent Contributions . . . ." (Id. ¶ 17, Ex. B, Ex. C.) The Policy for the Collection of Delinquent Contributions ("Collection Policy") provides, among other things, that (1) an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced, and (2) interest on delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code, except for contributions to the NEBF, which calculates interest at a rate of 10%. (Id. ¶¶ 22-23, Ex. C.)

The JIB also established Arbitration Procedures, which were incorporated by reference into the CBA. The Arbitration Procedures provide that the arbitrator shall have jurisdiction to determine any dispute between JIB and an employer that is "related to the Employer's obligation to contribute to" the Plans, "including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs . . . ." (Id. ¶ 24, Ex. D.) The procedures further provide that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs. (Id. ¶ 25.)

Finkel alleges that Respondent failed to report and remit required contributions for the payroll weeks ending October 14, 2020 through and including January 6, 2021. (Id. ¶ 26.) Finkel also alleges that Respondent owes contribution shortages for various weeks in 2019. (Id.) In response, Finkel initiated arbitration before the designated arbitrator, Stephen F. O'Beirne, and

---

[1] Other remedies under Section 502(g)(2) of ERISA include the unpaid contributions, interest on the unpaid contributions, and reasonable attorneys' fees and costs of the action. See 29 U.S.C. § 1132(g).

sent notification to Respondent via mail. (Id. ¶ 27, Ex. E; see also D.E. # 12 (enclosing a legible version of Exhibit H).)

The arbitrator held a hearing on March 30, 2021. (Pet. ¶ 29.) The arbitrator rendered the Award, dated March 31, 2021. (Id. ¶ 31; see also D.E. # 12.) The arbitrator found that Respondent was in violation of the terms of the CBA and ordered it to pay Finkel the sum of $100,574.09, consisting of: (1) shortages for various payroll weeks in 2019 of $2,571; (2) unpaid contributions to certain plans of $55,670.16, and interest thereon of $452.98; (3) unpaid contributions to certain plans of $20,812.80, and interest thereon of $208.36; (4) additional interest of $1,498; (5) liquidated damages of $16,410.79; and (6) attorneys' fees, arbitration fees, and administrative fees and costs of $2,950. (Pet. ¶ 32, Ex. H; see also D.E. # 12.)

Respondent has failed to abide by the Award, and the Award has not been vacated or modified and no application for such relief is currently pending. (Pet. ¶¶ 33-34.) The Petition is timely because it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award. (Id. ¶ 35); see Trs. of the Ne. Carpenters Health v. Countrywide Home Improvement, Inc., No. 17-cv-02570 (DRH) (ARL), 2017 WL 5690922, at *1 (E.D.N.Y. Nov. 27, 2017).

## DISCUSSION

### I. Confirmation of Unopposed Arbitration Awards

By a letter dated June 29, 2021, Finkel requested that the Petition be reviewed as a motion to confirm the arbitration award and be deemed an unopposed motion for summary judgment. (D.E. # 10.) I agree with Finkel and construe the Petition as an unopposed motion to confirm the arbitration award. See Trs. of the Ne. Carpenters Health, 2017 WL 5690922, at *2 ("Inasmuch as a petition to confirm an arbitration award typically is accompanied by a record, courts treat an

4

unanswered petition to confirm an arbitration award 'as an unopposed motion for summary judgment.'" (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006)).

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138 (2d Cir. 2007). "To encourage and support the use of arbitration by consenting parties," courts "use[] an extremely deferential standard of review for arbitral awards." Id. at 139. "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes.'"· Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (quoting N.Y. Hotel & Motel Trades Council v. Hotel St. George, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). In such cases, "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation marks omitted).

As a result, courts in this Circuit will vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the Federal Arbitration Act], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." Porzig, 497 F.3d at 139. A "party moving to vacate an arbitration award has the burden of proof by clear and convincing evidence." Zulworld Shipping, Inc. v. Prams Water Shipping Co., No. 11-cv-7597 (KBF), 2013 WL 2246913, at *2 (S.D.N.Y. May 16, 2013).

## II. The Award is Confirmed

The Petition is unopposed, and Finkel has provided uncontroverted materials that demonstrate an absence of a material issue of fact for trial. See D.H. Blair, 462 F.3d at 109-10.

The JIB commenced arbitration in accordance with the CBA, and now seeks confirmation of the Award rendered in their favor, as provided for under the agreement. (Pet. ¶ 18 (CBA provides that an employer "shall be liable for the remedies under section 502(g)(2) of ERISA").) The evidence submitted at the arbitration and to the Court establishes that Respondent agreed to be bound by the CBA, Collection Policy, and Arbitration Procedures during the relevant time period. (Id. ¶¶ 17, 19-20.) Pursuant to the CBA, the arbitrator was authorized to resolve any dispute between the "JIB against an Employer, related to the Employer's obligation to contribute to" the Plans, "including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs . . . ." (Id. ¶ 24.) The evidence further established that Finkel complied with these policies and procedures, including that the dispute was submitted to arbitration with due notice to Respondent. Based on the evidence presented, the arbitrator reasonably determined that Respondent failed to remit contributions to the Plans during the specified time periods.

On the record before the Court, I find no reason to doubt that the arbitrator acted within the scope of his authority to render the Award, nor any reason to find that any other basis for vacatur exists. Because I find that there is at least "barely colorable justification" for the arbitrator's award, and no material issue of fact for trial, I will uphold the arbitrator's decision and confirm the Award. See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. TNT Contracting & Consulting, Inc., No. 12-cv-8 (ALC), 2012 WL 548816, at *1 (S.D.N.Y. Feb. 17, 2012) (confirming arbitration award where the defendant failed to respond and the court found no material issue of fact for trial).

**III.    Damages and Interest**

The arbitrator ordered Respondent to pay JIB the sum of $100,574.09, consisting of: (1) shortages for various payroll weeks in 2019 of $2,571; (2) unpaid contributions to certain plans of

6

$55,670.16, and interest thereon of $452.98; (3) unpaid contributions to certain plans of $20,812.80, and interest thereon of $208.36; (4) additional interest of $1,498; (5) liquidated damages of $16,410.79; and (6) attorneys' fees, arbitration fees, and administrative fees and costs of $2,950. (Pet. ¶ 32.) Because the arbitrator granted these sums in accordance with the CBA, Collection Policy, and Arbitration Procedures, I confirm them. (See id. ¶¶ 18, 22-23, 32.); Trs. of the Ne. Carpenters Health, 2017 WL 5690922, at *3.

When interest accrues during the pendency of the action and it is explicitly requested in the complaint, such interest will be awarded. Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code (with the exception of one plan, the NEBF, for which interest is calculated at a rate of 10%). (Pet. ¶¶ 22-23.) Therefore, interest at the rates provided for in the CBA from March 31, 2021—the date of the Award—through the date of judgment is appropriate.

## IV.    Finkel is Entitled to Attorneys' Fees and Costs

Finkel requests attorneys' fees in the amount of $1,015 and costs in the amount of $475 incurred in prosecuting this action. (Id. ¶ 41-43.) Finkel is entitled to attorneys' fees under both ERISA and the CBA, which incorporates the remedies available under Section 502(g) of ERISA, see 29 U.S.C. § 1132(g). Additionally, "courts have routinely awarded attorneys['] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Abondolo v. H. & M. S. Meat Corp., No. 07-cv-3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases).

To support the request for attorneys' fees, Finkel submitted invoices that documented the specific tasks performed, the hours worked, and the partners' and legal assistants' hourly rates.

7

(Pet. ¶¶ 38-39; D.E. # 1-9.) Counsel for JIB billed JIB for the services of partners at the rate of $350 per hour and of legal assistants at a rate of $120 per hour. (Id.) I have reviewed the invoices and find that the requested attorneys' fees are reasonable. See, e.g., N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (approving rates of $425 per hour for partners and $150 per hour for paralegals in ERISA case). Accordingly, Finkel is entitled to attorneys' fees and costs in the amount of $1,490.

## CONCLUSION

For the foregoing reasons, the Petition is granted. The Award is confirmed, and the Clerk of Court is directed to enter judgment in favor of Finkel and against Respondent in the amount of $100,574.09, plus interest on the unpaid contributions at the rates provided for in the CBA from March 31, 2021, through the date of judgment, together with attorneys' fees and costs in the amount of $1,490.

SO ORDERED.

Dated: August 23, 2022
       Brooklyn, New York

Carol Bagley Amon
United States District Judge